UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Lee Richard M., Jr.,                                   Civ. No. 17-5125 (ADM/BRT)

          Plaintiff,

v.

Nancy Berryhill,                                       **REPORT AND**
Acting Commissioner of                                 **RECOMMENDATION**
Social Security,

          Defendant.
_____

Stephanie M. Balmer, Esq., Falsani, Balmer, Peterson & Balmer, counsel for Plaintiff.

Pamela Marentette, Esq., United States Attorney's Office; and Tracey Wirmani, Esq., Social Security Administration, Office of the General Counsel, counsel for Defendant.

BECKY THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the July 25, 2017 decision of the Commissioner of Social Security ("Commissioner"), which denied Plaintiff's claim for disability insurance benefits ("DIB"), granted Plaintiff's claim for social security income ("SSI") based on a finding that he became disabled (due to his more restricted residual functional capacity) beginning on February 1, 2014,[1] but denied Plaintiff's claim for SSI for any period prior to that date. The parties filed cross-motions for summary judgment in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 10, 14.)

---

[1]    The ALJ also found that Plaintiff met a listing due to his amputation on August 15, 2016.

Plaintiff argues that the more restricted residual functional capacity should have applied even earlier – specifically, dating back to his onset date of June 22, 2010, or at least dating back to August 2011 (which would have been prior to his date last insured of December 31, 2012, and which would have therefore made him eligible for both SSI and DIB benefits). Plaintiff also argues that the ALJ erred in not fully developing the record as was previously instructed by the district court for him to do on remand. This matter is referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 7.2, 72.1. For the reasons stated below, this Court recommends remanding the case for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

Plaintiff was born on October 2, 1970, making him almost thirty-nine years old as of his alleged onset date. (Tr. 853.) He has a high school education. (Tr. 59.) He lives with his wife and previously worked as an over the road truck driver and as a certified nurse's aide. (Tr. 249, 713.) Plaintiff has not worked since April 2008. (Tr. 64, 249.)

Since 2009, Plaintiff has filed several applications for disability insurance benefits and social security income. The applications at issue here are Plaintiff's applications for DIB and SSI that he protectively filed on December 8, 2010, asserting a disability onset date of June 22, 2010. (Tr. 163–70.)[2] Plaintiff's date last insured was December 31, 2012.

---

[2]    Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 8.)

Therefore, he must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits.

The Social Security Administration ("SSA") denied Plaintiff's applications both initially and on reconsideration. (Tr. 115–18, 119–21, 124–25, 126–28.) A hearing was then held by an Administrative Law Judge ("ALJ") on November 15, 2011. (Tr. 54–91, 131–35, 137–41.) The ALJ issued a decision denying benefits on May 4, 2012 (Tr. 8–28), and Plaintiff sought review. The SSA Appeals Council denied Plaintiff's request for review on January 16, 2013 (making the ALJ's decision the final decision of the Commissioner) (Tr. 1–4), after which Plaintiff filed an action in the United States District Court for the Western District of Arkansas, appealing the ALJ's decision. (Tr. 891–98.)

On June 26, 2014, the Arkansas District Court remanded Plaintiff's case to the SSA for further proceedings.[3] (Tr. 891–98.) In the court's remand order, it provided certain instructions for the ALJ to follow on remand; these instructions are at issue on this appeal and discussed further below. In particular, the Arkansas District Court remanded the case to the ALJ to fully and fairly develop the Plaintiff's record as to his gout and renal insufficiency. The court instructed the ALJ to re-contact Plaintiff's treating nephrologist and rheumatologist for clarification on Plaintiff's gout and renal insufficiency and to obtain a residual functional capacity ("RFC") assessment from them,

---

[3]   In May 2014, while the Arkansas District Court action was pending, Plaintiff filed a new application for DIB asserting a new disability onset date of May 5, 2012. (Tr. 1134–35.) Upon the remand directed by the district court, the May 2014 claim was consolidated with the remanded claims. (Tr. 910.)

and to also reassess Plaintiff's RFC and present that information to a vocational expert. (Tr. 674, 897.) The ALJ sent "medical source statement" forms to Plaintiff's treating nephrologist and rheumatologist, Dr. Valach and Dr. Sakr, in early 2016. (Tr. 1545–46, 1555–56.) Dr. Valach never responded. Dr. Sakr did respond, but only saying, "I do not fill out such forms." (Tr. 1549.)

Following another set of hearings on remand,[4] and after consideration of additional medical evidence that had been submitted since the previous ALJ decision, the ALJ issued a partially favorable decision on July 25, 2017. (Tr. 669–71, 674–96.) In his decision, the ALJ proceeded through the five-step evaluation process provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a) and 416.920(b). He first confirmed that Plaintiff's date last insured was December 31, 2012, and then found that Plaintiff had no substantial gainful activity since his alleged onset date of June 22, 2010. (Tr. 676–77.) At step two, the ALJ found that Plaintiff's gout and chronic renal insufficiency, among other things, were severe impairments.[5] (Tr. 677.)

Since the ALJ determined that Plaintiff had severe impairments, he continued to step three of the analysis, where a claimant must show that his impairment or

---

[4]   No medical expert testified at either hearing.

[5]   Plaintiff's other severe impairments include: "osteoarthritis/degenerative joint disease of the bilateral knees status post-surgery, osteoarthritis/degenerative joint disease of the left shoulder, osteoarthritis/degenerative joint disease of the right ankle status post-open reduction and internal fixation, obesity, noninsulin dependent diabetes mellitus . . ., hypertension, history of hernia repair, major depressive disorder, adjustment disorder with mixed anxiety and depressed mood, pain disorder associated with both psychological factors and general medical condition and cluster A and B personality traits (20 CFR 404.1520(c) and 416.920(c))." (Tr. 677.)

combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(iii). Relevant to this appeal, the ALJ found that the severity of Plaintiff's gout does not meet or medically equal the Listing 14.09 criteria and Plaintiff's chronic renal insufficiency does not meet or medically equal the Listing 6.02 criteria. (Tr. 678–79.) The ALJ did find, however, that Plaintiff met Listing 1.00B2b as of August 15, 2016, due to his above the knee amputation with stump complications. (Tr. 678.)

The ALJ then continued on to steps four and five in the disability analysis to determine whether Plaintiff may have been disabled prior to August 15, 2016. The ALJ determined that Plaintiff had a certain RFC for the time period prior to February 1, 2014,[6]

---

[6]  The ALJ determined that prior to February 1, 2014, Plaintiff had the RFC –

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant could not climb, kneel, crouch and crawl. He could occasionally balance, stoop and reach overhead with the left upper extremity. The claimant could not operate foot controls bilaterally and had to avoid concentrated exposure to temperature extremes, wetness, humidity and hazards, including no driving as a part of work. In addition, he could only do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little use of judgment and the supervision required is simple, direct and concrete.

(Tr. 681.) In making this determination, the ALJ pointed to the very same exhibits and made very similar comments as to Plaintiff's chronic renal insufficiency and gout as he had made in his previous decision, which was the basis for the district court's remand. (Compare Tr. 22–23, with Tr. 687.)

and a more restricted RFC for the time period after February 1, 2014.[7] For the time prior to February 1, 2014, the ALJ found, after considering testimony from a vocational expert, that Plaintiff was not able to perform any of his past work, but under the RFC of sedentary work, there were jobs that he would be capable of doing. (Tr. 694–95.) As of February 1, 2014, however, with the more restricted RFC, the ALJ found there would be no jobs Plaintiff would be capable of doing. (Tr. 696.) Therefore, the ALJ found Plaintiff was not disabled from the onset date through January 2014, but that as of February 1, 2014, Plaintiff was disabled under the Act. (Tr. 696.) Because Plaintiff's date last insured was December 31, 2012, he was only eligible for SSI benefits as of February 1, 2014. (Tr. 696.)

Plaintiff did not appeal the ALJ's decision to the Appeals Council, but rather waited sixty days, and then commenced this action seeking judicial review pursuant to 42 U.S.C. § 405(g) on November 16, 2017. (Doc. No. 1.) The parties have now filed cross-motions for summary judgment pursuant to the Local Rules. (Doc. Nos. 10, 14.) Plaintiff makes two arguments on appeal. He argues that the ALJ failed to follow the court's order to fully develop the record and reassess the RFC considering Plaintiff's gout and chronic renal insufficiency, and that therefore, the ALJ's RFC finding that Plaintiff could work full-time in a sedentary range of employment through January 2014 was in error. Plaintiff also argues that the ALJ erred in finding that Plaintiff did not have a listed

---

[7] The ALJ determined that, in addition to the Plaintiff's RFC described for the period before February 1, 2014, Plaintiff's RFC now included that he would be "off task for at least 12 percent of a normal workday and will miss two or more days of work per month on a regular and consistent basis." (Tr. 690.)

6

impairment until August 15, 2016, when his leg was amputated. In particular, Plaintiff claims that the ALJ did not properly weigh Plaintiff's differing IQ scores in the record because the ALJ did not consider that the Plaintiff's worsening medical condition could substantially have a deteriorating effect on his cognitive function. (Doc. No. 11, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. 12–13.) Defendant disagrees and requests that this Court affirm her final decision denying Plaintiff's claim for DIB and granting Plaintiff's claim for SSI based on a finding that he became disabled beginning February 1, 2014. (Doc. No. 15, Def.'s Mem. in Supp. of Mot. for Summ. J. 1.)

## DISCUSSION

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [h]e is not only unable to do h[is] previous work but cannot, considering h[is] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the

7

Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court thus considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner*, 607 F.3d at 536. If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart* 421 F.3d 785, 789 (8th Cir. 2005).

## II. Analysis

First, this Court addresses Plaintiff's argument that that ALJ did not abide by the district court's remand order to fully develop the record regarding Plaintiff's gout and chronic renal insufficiency and to reassess the RFC in light of that record. Plaintiff argues that the ALJ should have obtained opinions from the treating doctors, but even if that were not possible after attempts were made, then the ALJ should have sought a medical opinion from another treating physician or consultative doctor. This Court agrees.

As explained by the district court, a "claimant's residual functional capacity is a medical question." (Tr. 895 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).) "Therefore, a claimant's RFC assessment must be based on medical evidence that addresses the claimant's ability to function in the workplace." (Tr. 895 (quotations omitted)); *see Lauer*, 245 F.3d at 704 ("[T]he ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." (quotations omitted)). "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland*, 204 F.3d at 858 (quotations omitted). In other words, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (quoting *Rohan v. Chatter*, 98 F.3d 966, 970 (7th Cir. 1996)). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Nevland*, 204 F.3d at 858.

In addition, the ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (stating that an ALJ must fully and fairly

9

develop the record so that a just determination of disability may be made). Once an ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *see, e.g.*, *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (finding that an ALJ's failure to recontact Commissioner's consultative physician to authenticate his report was reversible error when the report supported Plaintiff's claim).

Any limitations from gout and chronic renal insufficiency, which were severe enough to be determined severe impairments, are "crucial issue[s]" that might change the outcome of the case. *Snead*, 360 F.3d at 838. On the first appeal, the district court pointed out that the issues of gout and chronic renal insufficiency had been raised:

> Plaintiff testified that he was diagnosed with gout roughly in his twenties. (Tr. 70.) The medical records in the transcript do not go back that far. However, he was diagnosed with gout on February 26, 2009 at the Baxter Medical Center Rheumatology Clinic. (Tr. 585–590.) At that time it was noted that his prior arthroscopic knee surgeries had not diminished pain and recurrent effusions. (Tr. 585.) He was diagnosed with gout again on June 22, 2009 at Baxter Regional Medical Center. (Tr. 435.) Treatment records for his chronic renal insufficiency also start in 2009. (Tr. 656.) At the time of the hearing on November 15, 2014, he testified that he was taking "kidney pills" and several other medications. (Tr. 72.) In a questionnaire that he filled out for his attorney on November 11, 2011, and referenced during that testimony, Plaintiff listed nine drugs that he was currently taking, including Indomethacin for gout and Enalapril for kidney issues. It also listed Tramadol and Hydrocodone APAP for pain. (Tr. 255.)

(Tr. 895–96.) The district court then made the following observations and findings:

> [N]either of these diagnoses were considered in the Physical RFC completed on January 22, 2011, or in the subsequent requests for medical advice. Nor is there any record of a medical source statement addressing Plaintiff's ability to function in the workplace from his treating rheumatologist or nephrologist. The ALJ did include these diseases in the Plaintiff's list of severe impairments. However, he dismissed the effect of

10

> both diseases for lack of objective evidence and failure to seek treatment when assessing the overall RFC. (Tr. 22–23.) Once the ALJ was made aware of a crucial issue that might change the outcome of a case, he had a duty to conduct further inquiry to fully develop the record. He did not. Further, because the record was not developed, the ALJ apparently assessed the effects of Plaintiff's gout and chronic renal insufficiency without the benefit of a medical opinion as to how these diseases might affect Plaintiff's ability to function in the workplace.

(Tr. 896.) The district court therefore concluded that remand was required and directed the ALJ on remand "to fully and fairly develop the record as to Plaintiff's gout and chronic renal insufficiency." (Tr. 897.) The district court also instructed that "[a]s part of this development the ALJ must recontact Plaintiff's treating nephrologist and rheumatologist for clarification on Plaintiff's gout and chronic renal insufficiency[,]" and further directed the ALJ "to obtain an RFC assessment from both specialists." (Tr. 897.) Once that information was obtained, the district court instructed that the ALJ should "re-assess[]" Plaintiff's overall RFC and present the information to a vocational expert. (Tr. 897.)

Remand orders often contain "instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed[,]" . . . and "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989)). "[T]he Eight Circuit has long held that an inferior court is bound to follow both the letter and the spirit of a remand[,]" which are "to be construed in light of the entire appellate opinion." *Fowler v. Colvin*, No. 13-3032, 2014 WL

11

3729854, at *4 (W.D. Ark. July 28, 2014) (citing *Thorton v. Carter*, 109 F.2d 316, 320 (8th Cir. 1940)).[8]

Here, the district court was very clear in its remand order that the record needed to be developed regarding Plaintiff's gout and chronic renal insufficiency. While the ALJ did attempt to contact Plaintiff's treating nephrologist and rheumatologist as instructed, asking them to "review all of the records in your possession regarding your treatment of [Plaintiff] . . . and then complete [and return] the enclosed 'Medical Source Statement of Ability to Do Work-Related Activities (Physical),'" he did not receive information that further developed the record. (Tr. 1545–54, 1555–66.) With respect to Dr. Sakr, Plaintiff's treating rheumatologist, his office returned the form crossed-out with the words "We do not have ability to do these. McBride Rehab can" written across the first page of the form. (Tr. 1549.) With respect to Plaintiff's treating nephrologist Dr. Valach,

---

[8] In *Fowler*, "the remanding court was concerned that the ALJ did not have a recent Physical RFC from an examining or treating physician which took her rheumatoid arthritis diagnosis into account" for the relevant period. 2014 WL 3729854, at *5. There, the record indicated that the Agency mailed a request to the examining physician, which was returned undelivered, and that "constituted the ALJ's entire effort to comply with the remand." *Id.* There was "no indication that either the ALJ or Plaintiff's attorney contacted UAMS to either find [the examining physician's] new location, or to have another UAMS rheumatologist examine Plaintiff using [the examining physician's] records." *Id.* "Nor [wa]s there any indication that the Agency ordered a consultative examination with any rheumatologist who could evaluate Plaintiff's current condition and estimate possible prior [rheumatoid arthritis] onset dates as recommended by the [Appeals Council][.]" *Id.* The court concluded that with "still no recent Physical RFC Assessment by a treating or examining physician which addresses Plaintiff's [rheumatoid arthritis] onset date for the relevant appeal period[,] . . . the ALJ has yet to follow either the letter or the spirit of the first remand[,]" and therefore "this [c]ourt must order a second remand." *Id.*

the ALJ received no response. (Pl.'s Mem. 18; Def.'s Mem. 15.) The ALJ did not try other means to contact either of these two treating physicians, nor did the ALJ contact other treating physicians or consulting or reviewing experts to obtain a medical opinion that related to Plaintiff's limitations from gout or chronic renal insufficiency.[9] Other than a few questions asked of Plaintiff at the hearings on remand about when he saw Dr. Sakr and Dr. Valach and his symptoms, the ALJ did no further development of the record, and certainly did not obtain a medical opinion, as was instructed by the district court. (*See* Tr. 758–59, 771.) No medical expert testified at either hearing following the remand, and no medical expert was asked to review Plaintiff's records. Instead, the ALJ once again, on his own, and relying on the same exhibits as he had relied on in his earlier decision, concluded that the objective findings did not show Plaintiff's chronic renal insufficiency or gout was as limited as alleged. (Tr. 687.) Therefore, as was pointed out by the district court previously, "the ALJ apparently assessed the effects of Plaintiff's gout and chronic renal sufficiency without the benefit of a medical opinion as to how these diseases might affect Plaintiff's ability to function in the workplace." (Tr. 896.) And thus, for the same reasons as the district court found before, remand is required.

---

[9] Defendant argues that the ALJ was not required to obtain another medical opinion because "an ALJ is only required to obtain such additional evidence when the available evidence does not provide an adequate basis for determining the merits of a disability claim," and here, "the record contained sufficient evidence to make a supported decision on Plaintiff's claim, and there was no conflict, inconsistency, ambiguity, or insufficiency needing to be resolved." (Def.'s Mem. 15–16.) The Arkansas District Court disagreed that the record evidence was sufficient; and this Court will not subvert the prior district court decision.

13

Because disability has already been determined from February 1, 2014, through the date of the ALJ's July 25, 2017 decision, critical to the remand is the development of the record for the time period of June 22, 2010 (the onset date) through January 2014 with respect to Plaintiff's gout and chronic renal insufficiency, and particularly the medical opinion evidence in that regard. Starting with Plaintiff's treating physicians, the ALJ must again recontact Plaintiff's treating nephrologist and rheumatologist for clarification on Plaintiff's gout and chronic renal insufficiency and seek an RFC assessment from both specialists. When doing so, the ALJ must attach the Court's Order along with the request. If there is again no response, the ALJ must consult with other consulting and reviewing specialists (in the fields of nephrology and rheumatology) and seek an RFC assessment from them. Once that information is obtained, the ALJ must reassess Plaintiff's overall RFC and present the information to a vocational expert. On remand, in addition to reconsidering the Plaintiff's RFC, the ALJ must also determine whether any new information received regarding Plaintiff's gout and chronic renal insufficiency changes the ALJ's consideration of Plaintiff's IQ scores and confirm whether the ALJ's Listings determination remain the same.[10]

---

[10] Because this Court concludes that a remand is necessary to fully develop the record regarding Plaintiff's gout and chronic renal insufficiency, and because any development of that record, in addition to affecting the Plaintiff's RFC, may affect the ALJ's analysis regarding the Listings relating to those two severe impairments, the Court need not address Plaintiff's remaining argument regarding the Listings – and particularly the weighing of Plaintiff's IQ scores.

# RECOMMENDATION

Based on the foregoing, and all the files, records, and submissions herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 10) be **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 14) be **DENIED**;

3. This matter be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation; and

4. Judgment be entered accordingly.

Date: December 17, 2018            *s/ Becky R. Thorson*
                                   BECKY R. THORSON
                                   United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).